IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2017

**STATE OF TENNESSEE v. KERRY GRANDERSON**

**Appeal from the Criminal Court for Shelby County**
**No. 15-03052     John W. Campbell, Judge**

---

**No. W2016-01687-CCA-R3-CD**

---

The Defendant, Kerry Granderson, was convicted by a Shelby County Criminal Court jury of aggravated robbery, a Class B felony, and was sentenced to eleven years in the Tennessee Department of Correction.  On appeal, the Defendant argues that:  (1) the trial court erred in admitting a witness's prior statement to police as substantive evidence; (2) the trial court erred in admitting jailhouse phone calls made by him; and (3) the evidence is insufficient to sustain his conviction.  After review, we affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Mark Mesler, Memphis, Tennessee, for the appellant, Kerry Granderson.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Bridgett Stigger, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On January 10, 2015, approximately $200 was taken from the car of the victim, Anfernee Thomas, by Nakayla Evans while the armed Defendant forced the victim to remain inside the residence where his car was parked.  As a result of his involvement in the incident, the Defendant was indicted for aggravated robbery, and the case proceeded to trial.

The victim testified that, on the day in question, he had plans to meet Ms. Evans when he got off work as a security guard at 7:00 a.m. Ms. Evans told the victim that she needed money for herself and her child, and he agreed to take Ms. Evans $20 because he was in the area and interested in having sex with her. The victim and Ms. Evans communicated somewhat regularly on Facebook, but they had not met before this time. Ms. Evans told the victim that she lived alone, and the victim assumed that she was nineteen years old although he did not know her age.

When he arrived at the address given to him by Ms. Evans, 4583 Addington Drive, the victim parked in the driveway and texted Ms. Evans to come outside and get the money. The victim had become uneasy about the situation during the drive and also had another obligation, so he did not want to go inside. Ms. Evans said that it was too cold and told the victim to come inside. The victim agreed because he needed to use the restroom. When Ms. Evans met him at the door, the victim handed her $20 and asked to use the restroom.

The victim testified that, after leaving the restroom, he encountered the Defendant in the living room. The Defendant asked the victim why he was there and if he knew that Ms. Evans was sixteen years old. The Defendant told the victim to empty his pockets, and the victim showed the Defendant his cell phone, a Bluetooth charger, and his car keys. The Defendant then pulled out a silver/gray gun and said, "[W]here the money at[?]" Scared and in a state of shock, the victim replied that there was $100 in his car. The Defendant told the victim to get on his knees and asked if he wanted to live, die, or go to jail for rape. The Defendant then called for Ms. Evans from a back room and told her to go get the money from the victim's car.

The victim testified that he actually had $220 in his car, hidden under the cup holder. When Ms. Evans returned with more than $100, the Defendant asked the victim why he had lied and instructed him to beg for his life. After standing over the victim for ten to fifteen seconds, the Defendant told the victim to leave the house. The victim fled to the closest fire station, called the police, and told the responding officers about the robbery. Approximately twenty minutes after the robbery, Ms. Evans sent the victim a message on Facebook apologizing and claiming that she did not know the robbery was going to happen.

Eight days after the robbery, the victim identified the Defendant and Ms. Evans from photographic arrays. On the Defendant's photograph, the victim wrote, "The guy who held me at gunpoint and asked [Ms. Evans] to go to my car and get my money." The victim testified that he received phone calls from unknown individuals who claimed they were going to pay back the money.

Nakayla Evans testified that she was presently seventeen years old and the mother of a seven-month-old baby. She said that she had known the Defendant for a couple of months and was friends with his sister but denied that he was the father of her baby. She did not remember telling the police that she had known the Defendant for two years.

Ms. Evans testified that she met the victim on Facebook and communicated with him online but had only known him for approximately two months. On the date in question, Ms. Evans asked the victim for $20 to buy food and gave him the address to bring the money. She said that the victim brought her the money but wanted sex in return. She stated that the victim did not use the restroom. Ms. Evans recalled that the Defendant, who was asleep in the next room, woke up and told the victim to leave. She said that the Defendant did not have a gun.

Ms. Evans acknowledged giving a statement to police on January 18, 2015, but she claimed that she did not read the statement before signing it. She identified the statement and her initials and signature on it. She said that neither her mother nor a lawyer was present, even though she was only sixteen years old at the time. Ms. Evans admitted telling the police that the Defendant had a gun and told them the color of the gun, but she claimed she did not remember what color she told them. She did not recall telling the police that she had played with the weapon. Ms. Evans acknowledged telling the police that she took over $200 from the victim and that the Defendant told her to get the money from the car, but she claimed she did not remember what she told the police she had done with the money "because that wasn't true." Ms. Evans said that most of what she said in her statement was not true.

In response to the State's questioning about her prior statement to police wherein she said that the Defendant had a gun, Ms. Evans claimed that the statement was false. She also said that her statements that the gun was silver and that she had played with the bullets were false. Questioned about her prior statement that she spent $40 of the money on clothing, Ms. Evans claimed the statement was false. Further, she claimed that her statements as to the Defendant's buying items for her and that she had known him for two years were false. Ms. Evans said she did not remember apologizing to the victim in a Facebook message.

Ms. Evans claimed that the police told her that she could go home if she implicated the Defendant and that she made up some of her statement and the police told her to say other things. She admitted speaking to the Defendant's mother after the robbery but claimed she did not remember saying that she was not going to testify against the Defendant. She maintained the Defendant was not the father of her child. She admitted pleading guilty to aggravated robbery in juvenile court but said she did so

because she was told she would get probation and "be able to go home with [her] baby." Ms. Evans admitted mailing a letter to the Defendant apologizing for "lying on him" to the police. However, she claimed that she had only known the Defendant for two months, was not close to him, and did not care what happened to him.

On cross-examination, Ms. Evans stated that the victim brought her money and was disappointed when she refused to have sex with him. The victim left after the Defendant told him that Ms. Evans was only sixteen years old. She said she told the police that there was no robbery or weapon, but officers pressured her into making another statement using words they suggested. Ms. Evans claimed she did not understand some of the words used in the statement she signed. On redirect examination, Ms. Evans acknowledged that she was about one month pregnant on the date of the incident.

Officer Alphonso Jenkins with the Memphis Police Department responded to a fire station on January 10, 2015, regarding an aggravated robbery. Officer Jenkins met with the victim, who reported that a young man and woman at 4583 Addington Drive took $320 from him and that the man had a gun. Officer Jenkins and other officers responded to the address, surrounded the house, and knocked on the front door. They heard movement inside, but no one answered.

Officer Clarence Farwell with the Memphis Police Department testified that he responded to 4583 Addington Drive on January 18, 2015, in response to a 911 hang-up call. When he arrived at the scene, he made contact with the Defendant and Ms. Evans, who were the only people in the house. The Defendant and Ms. Evans claimed they were uncle and niece. Officer Farwell ran a check of their names and found a report listing Ms. Evans as a robbery suspect. After conferring with the Felony Response Unit, Officer Farwell arrested Ms. Evans as well as the Defendant, who matched the description of the second robbery suspect.

Alice Cole with the Shelby County Criminal Court Clerk's Office testified that anyone who is arrested or cited receives a record and identification number. The Defendant's record and identification number is 393041, and his booking number is 15101784. Ms. Cole explained that the record and identification number an individual receives following a first arrest is the arrestee's forever, but booking numbers are case specific.

Jerry Lee Kimble, Ms. Evans' grandmother, testified that Ms. Evans lived with her from April 2015 to early 2016 and, when she moved out, she left behind clothing and letters. One letter was addressed to Ms. Evans, and the return address had the Defendant's name and booking number 15101784. Ms. Kimble read a portion of the

letter: "(Indiscernible) worry baby, I'll be home soon. They going to break my charges down to a aggravated assault or a theft because I . . . didn't take none off him. The [sic] only put the strap . . . on him and he said ain't none in his pocket."

Sergeant Kelvin D. Hailey with the Memphis Police Department testified that he investigated the robbery and took Ms. Evans' statement after her arrest. Sergeant Hailey explained that when suspects first enter the police office, they are asked if they need to use the restroom or need food or drink. Questioning begins with general conversation about the suspect's age, address, who they live with, school or education background, and contact information. Officers discuss the charges and explain the suspect's Miranda rights and then let the suspect decide whether to give a statement. During Sergeant Hailey's general conversation with Ms. Evans, he learned that she was sixteen years old and not attending school. He reviewed the advice of rights form with Ms. Evans, reading and explaining each right and asking if she understood. Ms. Evans initialed each right to indicate that she understood and then printed and signed her name indicating that she was willing to give a statement. Ms. Evans signed the form at 4:22 a.m.

Sergeant Hailey testified that he talked to Ms. Evans intermittently for several hours before taking her statement. Ms. Evans' mother, Lisa Mitchell, came to the police station at 6:31 a.m. but left before Ms. Evans gave her statement at 7:17 a.m. Sergeant Hailey explained that, when taking a statement, he reads the pre-typed questions and the suspect's answers, and a second officer types the answers word-for-word. The statement is then printed, and the suspect reviews it, initials each page, and signs the last page to indicate that he or she read the statement and that it reflects what he or she said or meant to say. Sergeant Hailey testified that Ms. Evans initialed and signed her statement.

The statement was read aloud to the jury with the State reading the questions and Sergeant Hailey reading Ms. Evans' answers. In her statement, Ms. Evans denied participating in the robbery but admitted that she was present and that the Defendant told her to get the victim's money out of his car. She said that the Defendant was a "close friend" whom she had known for two years. Ms. Evans stated that she did not see the Defendant with a weapon but heard the Defendant ask the victim if he wanted to die or go to jail. She said that she took $240 from the victim's car and that the Defendant bought her a $40 outfit. Asked to describe the events leading up to and surrounding the robbery, Ms. Evans stated that she communicated with the victim on Facebook and asked him if she could borrow $20 to buy some food. The victim agreed and asked for her address. The victim sent her a text message when he arrived and then came inside and gave her $20. While Ms. Evans was in the bathroom, she heard the Defendant ask the victim if he knew that Ms. Evans was sixteen years old. The Defendant asked the victim if he wanted to die or go to jail. When the victim said he wanted to go to jail, the Defendant asked how much money he had. The victim said that he had $100 in the cup

holder of his car. The Defendant came to the bathroom and told Ms. Evans to get the money from the victim's car. Ms. Evans got the money and gave it to the Defendant, and the victim left. Asked who planned the robbery, Ms. Evans said, "I don't think it was planned." Asked if she had been truthful when she earlier said that the Defendant was unarmed, Ms. Evans said it was not a true statement and that the Defendant was armed with "a silver baby .32 revolver that had [a] brown wood hammer." She had played with the gun's bullets before. Ms. Evans said that the Defendant had the gun for about a month and that he pointed it at the victim from six feet away. Ms. Evans stated that, after the robbery, she sent the victim a Facebook message apologizing for the robbery. At the end of her statement, Ms. Evans said that she did not think that the Defendant "was attempting to rob [the victim]."

On cross-examination, Sergeant Hailey acknowledged that Ms. Evans was held in an interview room from 2:51 a.m. to 4:22 a.m. before she was advised of her Miranda rights. He claimed that she was able to read her rights aloud without any problems with the terms or words. Sergeant Hailey admitted that Ms. Evans' original version of the events was that the victim wanted sex in exchange for the money and got mad and left when she said no. He did not take a typed statement of Ms. Evans' original version of the events because he did not believe her. Sergeant Hailey said that all of the answers in Ms. Evans' typed statement were in her words, not his.

Deputy Ruben Ramirez with the Shelby County Sheriff's Office testified that his job is to compile phone calls made by inmates in the jail when an agency requests such calls for investigative purposes. Deputy Ramirez identified the record and identification number assigned to the Defendant for making phone calls from the jail and two CDs of such calls. The State then played portions of different phone calls for the jury. Deputy Ramirez testified that during a call made on January 25, 2015, the Defendant said, "The detectives going to tell him to come to court or pressure him to come to court and just get in contact with them so he doesn't come to court." In another call, references were made to "the blood line" and the statement, "more than likely it is."

Following the conclusion of the proof, the jury convicted the Defendant, as charged, of aggravated robbery.

## ANALYSIS

### I. Introduction of Witness's Statement

The Defendant argues that the trial court erred in admitting Ms. Evans' statement to the police as a prior inconsistent statement because it contained consistent portions and the requirements of Tennessee Rules of Evidence 613(b) and 803(26) were not satisfied.

He elaborates that Ms. Evans' statement did not meet the requirements of Tennessee Rules of Evidence 613(b) and 803(26) because "the State did not remotely confront the witness about each and every assertion contained within the statement."

The court conducted a jury-out hearing on the State's motion to introduce Ms. Evans' prior statement as extrinsic evidence. The court reviewed Tennessee Rule of Evidence 613(b) and determined that its requirements were met. The court then considered Rule 803(26) and found that Ms. Evans testified at trial and was subject to cross-examination. The court also found that Ms. Evans acknowledged her signature and initials on the written statement and noted that it was conducting the requisite jury-out hearing. The court heard testimony of Sergeant Hailey about Ms. Evans' statement to determine whether the statement was given under circumstances indicative of trustworthiness. The Defendant argued that it was not because the language in the statement was not in line with Ms. Evans' limited understanding of trial proceedings, the questions posed, or the phrasing of those questions. The court deemed it illogical that the police would have instructed Ms. Evans to say the Defendant had a revolver when the victim said that the weapon was a semi-automatic handgun. The court found by a preponderance of the evidence that Ms. Evans made the statement under circumstances indicative of trustworthiness, that there were no indications of coercion, and that Sergeant Hailey was a credible witness.

Tennessee Rule of Evidence 803(26), "Prior Inconsistent Statements of a Testifying Witness," provides that a witness's prior statement is admissible as substantive evidence if it is otherwise admissible under Rule 613(b) and if all the following conditions are satisfied:

> (A) The declarant must testify at the trial or hearing and be subject to cross-examination concerning the statement.
>
> (B) The statement must be an audio or video recorded statement, a written statement signed by the witness, or a statement under oath.
>
> (C) The judge must conduct a hearing outside the presence of the jury to determine by a preponderance of the evidence that the prior statement was made under circumstances indicating trustworthiness.

Tenn. R. Evid. 803(26). Tennessee Rule of Evidence 613(b) provides in pertinent part that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless and until the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." "[F]or the purposes of Tennessee Rule of

Evidence 803(26), a prior statement about events that a witness claims at trial to be unable to remember is 'inconsistent' with the witness' trial testimony." State v. Davis, 466 S.W.3d 49, 64 (Tenn. 2015).

With regard to the Defendant's claim that Ms. Evans was not questioned "about each and every assertion contained within [her] statement," we note that this court has previously held that a witness must be confronted about all parts of his or her statement in order to satisfy the first factor of Rule 803(26), that the statement be admissible under Tennessee Rule of Evidence 613(b). See State v. Charles Jackson and Willis Holloway, No. W2010-01133-CCA-R3-CD, 2012 WL 543047, at *10 (Tenn. Crim. App. Feb. 17, 2012), perm. app. denied (Tenn. June 22, 2012). The Defendant alleges that the State "did not remotely confront" Ms. Evans about all the "27 question[s] and answers" contained in her statement, but he does not point out what questions were left out. The record shows that the State confronted Ms. Evans with her prior statement to police wherein she said that the Defendant had a gun, that the gun was silver, that she had played with the bullets, that the Defendant spent $40 of the robbery proceeds on clothing for her, that she had known the Defendant for two years, that she heard the Defendant ask the victim if he wanted to die or go to jail, that the Defendant pointed a gun at the victim from six feet away and told him to leave, and that she apologized to the victim in a Facebook message. We do not see any major points in Ms. Evans' statement that were omitted. Ms. Evans was afforded the opportunity to explain or deny her prior statement, essentially saying that most of her statement was not true or she did not recall what she said, and thus the requirements of Rule 613(b) were satisfied.

With regard to the Defendant's claim that the trial court erred in allowing Ms. Evans' entire statement into evidence as portions of it were consistent, this court has previously held that when a witness's prior statement contains both consistent and inconsistent portions, the consistent portions are not admissible pursuant to Tennessee Rule of Evidence 803(26). See Charles Jackson and Willis Holloway, 2012 WL 543047, at *10; see also State v. Nathan Bernard Lalone, No. E2016-00439-CCA-R3-CD, 2017 WL 2297653, at *19 (Tenn. Crim. App. May 25, 2017); State v. Robert Allen Zaloba, No. M2011-00855-CCA-R3-CD, 2012 WL 6690027, at *20-21 (Tenn. Crim. App. Dec. 26, 2012), perm. app. denied (Tenn. Apr. 10, 2013). We note that there were a few benign points of Ms. Evans' testimony that were consistent with her statement to the police and that those statements should have been redacted, but the vast majority of her testimony was inconsistent or she claimed to be unable to remember. Although it was error for the consistent portions of Ms. Evans' statement to have not been redacted, such error was harmless. "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). We cannot conclude that the

failure to redact the benign consistent portions of Ms. Evans' statement more probably than not affected the judgment in this case.

## II. Admission of Phone Calls

The Defendant argues that the trial court erred in admitting his jailhouse phone calls because the calls were not probative of the aggravated robbery charge and contained "highly prejudicial" information. He asserts that the contents of the calls suggested that he was the father of Ms. Evans' child and that, with Ms. Evans being seventeen years old and he being twenty-five years old, he would be guilty of statutory rape if he were the father of the baby.

Before the introduction of the jailhouse phone calls, the trial court held a hearing to address the Defendant's objection to introduction of the calls as being in violation of Tennessee Rule of Evidence 404(b) because they contained evidence of another crime, namely statutory rape due to his sexual relations with Ms. Evans. The court found that the proof at trial established a material issue other than propensity – Ms. Evans' credibility and potential for bias. The court found that proof of the statutory rape was clear and convincing given the Defendant's statement that he was likely the father of Ms. Evans' child. The court concluded that the probative value of the evidence was "so high" that "the risk [of] prejudice comes [no]where near to the probative value of th[e] evidence."

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. All relevant evidence, subject to certain exceptions, is generally admissible under Rule 402 of the Tennessee Rules of Evidence. Relevant evidence may be excluded, however, if "its probative value is substantially outweighed by the danger of unfair prejudice." Tenn. R. Evid. 403.

Tennessee Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Such evidence may, however, be admitted for other purposes if the following conditions are met prior to admission of this type of proof:

> (1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).  "Other purposes" have been defined to include the defendant's motive, intent, guilty knowledge, identity, absence of mistake or accident, a common scheme or plan, completion of the story, opportunity, and preparation.  See State v. Berry, 141 S.W.3d 549, 582 (Tenn. 2004).  Where the trial judge has substantially complied with procedural requirements, the standard of review for the admission of bad act evidence is abuse of discretion.  State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

In this case, the trial court followed the Rule 404(b) procedures precisely.  The court held a hearing outside the jury's presence. After hearing the arguments of the parties, the trial court found the existence of a material issue other than propensity, specifically Ms. Evans' credibility and potential for bias, which it deemed "a pretty critical item in the case."  The court found that proof of the statutory rape was clear and convincing, given the Defendant's statement that he was likely the father of Ms. Evans' child.  The court concluded that the probative value of the evidence was not outweighed by the danger of unfair prejudice, elaborating that "the probative value in this case is so high or this proof is so high that . . . I just don't think the risk to prejudice comes anywhere near to the probative value of this evidence."  Again, as long as the trial court complies with the procedures set out in Tennessee Rule of Evidence 404(b), its determination "will be given great deference on appeal and will be reversed only if the trial court abused its discretion."  State v. Dotson, 450 S.W.3d 1, 76-77 (Tenn. 2014).  The trial court properly analyzed the issue, and we uphold its determination.

### III.  Sufficiency of the Evidence

The Defendant challenges the trial court's denial of his motion for judgment of acquittal and the sufficiency of the evidence at trial.  Although worded differently, each of these issues is essentially a challenge to the sufficiency of the convicting evidence, and we, thus, combine the issues.

The Defendant asserts that he "did not take or cause to have taken any property 'from the person of another'" because the proof, at most, showed that he "caused property to be taken from the victim's vehicle in the driveway of the house wh[ile] [he] and the alleged victim were inside."

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523, 527 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

For the purposes of this case, aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. §§ 39-13-401(a), -402.

-11-

In the light most favorable to the State, a rational trier of fact could have found that the Defendant committed aggravated robbery. The victim testified that the Defendant told him to empty his pockets. The victim showed the Defendant his cell phone, a Bluetooth charger, and car keys. The Defendant ignored these items and pulled out a silver/gray gun and said, "[W]here the money at[?]" Scared and in a state of shock, the victim replied that there was $100 in his car. The Defendant told the victim to get on his knees and asked if he wanted to live, die, or go to jail for rape. The Defendant then called for Ms. Evans from a back room and told her to get the money from the victim's car. When Ms. Evans returned with more than $100, the Defendant asked the victim why he had lied and instructed him to beg for his life before finally being allowed to leave. The robbery statute does not require a "taking," therefore "an offender can commit a robbery by asserting control over the property without any degree of asportation or physical taking[.]" State v. Nix, 922 S.W.2d 894, 900-01 (Tenn. Crim. App. 1995).

> In other words, . . . if an offender, with the intent to deprive the owner, asserts control over property by means of the owner or possessor being removed from the presence of the property by force or fear, the offense of robbery is committed to the same degree that it is if the offender carries the property away from the victim's presence.

Id. at 901. See also State v. Zachary Gale Rattler, No. E2015-01570-CCA-R3-CD, 2016 WL 6111645, at *12 (Tenn. Crim. App. Oct. 19, 2016), perm. app. denied (Tenn. Mar. 8, 2017) (upholding especially aggravated robbery conviction where the defendant attacked the victim inside his home, the victim fled the scene, and the defendant took the victim's vehicle when the keys were inside the vehicle and the victim was unaware of the taking because he was running away). The evidence shows that the Defendant, via direction to Ms. Evans, asserted control over the victim's property while placing the victim in fear and using a deadly weapon. The evidence is sufficient to sustain the Defendant's conviction for aggravated robbery.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-12-